# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JOHN FISHBACK, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. JFM-12-648 |
| DEPUY ORTHOPAEDICS, et al., | * | |
| Defendants | * | |

***

## **MEMORANDUM**

Plaintiff John Fishback ("Fishback") filed the above-captioned Complaint pursuant to 42 U.S.C. §1983.[1] Defendants Asreahegn Getachew, Colin Ottey, Corizon, Inc., f/k/a Correctional Medical Services, Inc., and Majd Arnaout, (the "medical defendants") by their attorneys filed motions to dismiss, or in the alternative for summary judgment. ECF Nos. 15 & 21. Defendants Secretary of the Department of Public Safety and Correctional Services (DPSCS) Gary D. Maynard, Deputy Secretary of Operations for DPSCS J. Michael Stouffer, North Branch Correctional Institution ("NBCI") Warden Bobby P. Shearin, Western Correctional Institution (WCI") Warden Frank B. Bishop, Jr., Medical Director for the DPSCS Sharon Baucom, M.D., and Agency Contract Operations Manager (ACOM) Barbara Newlon, (the "state defendants") by their attorneys have also filed a motion to dismiss or, in the alternative, motion for summary judgment. ECF No. 26. Nao B. Odefle, through counsel, has filed a motion to dismiss, or in the alternative, for summary judgment. ECF No. 44. Plaintiff has not filed a response.[2]

---

[1] Plaintiff's allegations against defendants Depuy Orthopaedics, Michael O'Brian and Ahmad Murthi were dismissed on June 26, 2012. ECF No. 14.

[2] Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), on July 10, 2012, July 23, 2012, August 16, 2012, and February 14, 2013, plaintiff was notified that defendants had filed dispositive

After review of the papers and applicable law, the court determines that a hearing is unwarranted. *See* Local Rule 105.6 (D. Md. 2011). For the reasons that follow, the dispositive motions will be GRANTED.

**Background**

Fishback, an inmate currently confined at NBCI, filed the instant complaint, alleging that he has been denied adequate medical care for a left shoulder injury and a defective medical device. ECF No. 1. His original complaint named Depuy Orthopeadics, manufacturer of the medical device plaintiff claims is defective and physicians at the University of Maryland Medical System who performed shoulder surgery on him in 2004. Those defendants were previously dismissed from the case and plaintiff's civil rights complaint alleging denial of adequate medical care was permitted to proceed as to the named correctional and medical defendants.[3] *See* ECF No. 14.

Plaintiff claims that he had rotator cuff replacement surgery on his left shoulder on August 13, 2004.[4] He states that he was provided incorrect information at that time and denied a second medical opinion. He further alleges that the prosthesis or "cap" that was surgically inserted into his shoulder is defective, or is the wrong size and does not fit properly. ECF No. 1.

---

motions, the granting of which could result in the dismissal of his action. ECF Nos. 16, 22, 27, and 45. Plaintiff was also informed that he was entitled to file materials in opposition to those motions within seventeen (17) days from the date of that letter and that his failure to file a timely or responsive pleading or to illustrate, by affidavit or the like, a genuine dispute of material fact, could result in the dismissal of his case or in the entry of summary judgment without further notice of the court. *Id.* Plaintiff sought and was granted numerous extensions of time. ECF Nos. 24, 25, 28, 29, 32, 33, 36, and 37. His most recent requests for extension of time were denied, as he had been given over seven months to respond to the medical defendants' dispositive motion. ECF Nos. 40, 48, 52 & 53.

[3] Service has not been properly affected on defendants Labid Syad and Sudair Kathuria. For the reasons that follow, even if service had been properly obtained, these defendants would be entitled to summary judgment. Accordingly, plaintiff's complaint against Syad and Kathuria shall be dismissed.

[4] Plaintiff previously filed a civil rights complaint concerning his claims of denial of adequate medical care to his left shoulder. *See Fishback v. DPSCS*, Civil Action No. JFM-07-1883 (D. Md.) That case summarized plaintiff's medical care to date and defendants' motion for summary judgment was granted.

Plaintiff further alleges that beginning in April of 2010, Dr. Arnaout treated him like a "drug addict" rather than a patient in need of pain control.  He references an email from Dr. Getachew directing the discontinuation of narcotics as pain control to all inmates.  Plaintiff states that he has not been provided pain relief and has been denied treatment for post-operative injuries, pain and suffering. *Id*.

Plaintiff also claims that at a medical appointment with Saam Tabar, M.D. on September 20, 2011, he was advised that although Tabar was not an expert on prosthetics, it appeared that plaintiff's left shoulder prosthesis fit improperly.  Plaintiff states he has lost all range of motion and mobility in his left shoulder and it is always swollen and discolored.  He states that he needs corrective surgery on his left shoulder and fears he could contract an infection which could result in the loss of his arm.  He further states that he needs pain medication and a TENS Unit. *Id.*

The material facts are not in dispute.  On August 13, 2004, plaintiff underwent a left shoulder hermiarthroplasty at the University of Maryland Hospital where he received a prosthetic shoulder.  ECF No. 15, Ex. 1-2.

On January 27, 2010, plaintiff met with medical staff who reviewed a recent shoulder x-ray, which showed a narrowed joint space, high riding prosthesis and spurring of the lower Glenoid rim. An outside orthopedic referral was requested and later approved by Wexford.[5]  *Id*., Ex. p. 7, 15-18.

On April 30, 2010, plaintiff was treated by defendant Arnaout, who noted plaintiff had received Ultram, a narcotic analgesic, for an extended period of time.  Arnaout concluded that Ultram was ineffective in decreasing plaintiff's pain.  Plaintiff requested that his dosage of

---

[5] Wexford is the utilization review contractor for the State of Maryland. Wexford reviews and approves all requests for on and off-site consultants.  .

Ultram be increased. Arnaout determined, however, that plaintiff was "seeking drugs" and implemented a treatment plan tapering plaintiff off Ultram. *Id*., p. 21-23.

Plaintiff was again evaluated by Arnaout on May 11, 2010. At this time, Arnaout suggested plaintiff was addicted to Ultram and Arnaout did not "feel comfortable [continuing] prescribing Ultram or any other narcotic." Arnaout showed plaintiff reports documenting Ultram is an opiate and told plaintiff he would continue to wean him off Ultram and start him on NSAIDS. *Id*., p. 24-26.

On May 26, 2010, plaintiff refused to be examined by Arnaout and reported he could not move his shoulder. Arnaout noted plaintiff did not exhibit any physical signs of pain but spent "about an hour requesting Ultram, Ultram only." Arnaout again advised plaintiff of the treatment plan. Plaintiff continued to state he was "in need for only Ultram right now."[6] *Id*., p. 29-31.

Plaintiff was evaluated by orthopedic specialist Ashok Krishnaswamy, M.D., on June 18, 2010. *Id*., Ex. 37-38. Krishnaswamy recommend an MRI with contrast be performed to rule out a rotator cuff tear. He also recommended an EMG and nerve conduction study be performed due to plaintiff's complaints of pain radiating in his arm. He recommended plaintiff be provided Tylenol or other NSAID for pain relief, not Neurontin or Ultram. *Id*.

On July 6, 2010, Wexford approved the MRI and EMG studies. *Id.,* Ex. 41. An MRI was performed on plaintiff's left shoulder on August 61, 2010. *Id*., p. 47-48. The prosthetic in plaintiff's shoulder limited the scope of the study, because the metallic head interfered with the

---

[6] Arnaout's notes for this visit detail his extensive review of plaintiff's chart relative to plaintiff's narcotic prescriptions. The notes further reflect Arnaout's stated concern over the safety of continuing plaintiff on narcotics, particularly in light of the lack of tracking of the prescription and need for safe amongst plaintiff's various health care providers. Arnaout also noted he would follow up with Dr. Tessema for a second opinion as to the provision of narcotics to plaintiff. *Id*.

4

view the MRI was able to capture. The results were explained to plaintiff on September 27, 2010. *Id*., p. 52-3.

In the interim, on July 13, 2010, medical staff determined that plaintiff's history of suicide attempts made his prescription for Ultram dangerous. Plaintiff was advised that Ultram-related deaths had occurred among patients with histories of suicidal ideation. It was further explained to plaintiff that Ultram has addictive side effects which could cause neurological problems. *Id*., p. 43-44. On August 22, 2010, plaintiff again requested "stronger pain medication" and it was again explained to him that the medications could not be administered due to his pre-existing psychological conditions that increase his risk for self-harm.[7] *Id*., p. 49.

On September 27, 2010, medical staff discussed with plaintiff treatment by means of steroid injection and repeated why Ultram could not be prescribed.[8] The recommendation for steroid injection was based on findings from the MRI which revealed plaintiff had "moderate effusion/synovitis" of the biceps tendon. Medical staff concluded that steroid injection would be beneficial and the injection was administered on October 11, 2010. *Id*., p. 59-60.

On October 5, 2010, plaintiff received the recommended EMG and nerve conduction study. *Id*, p. 54-55.

On December 18, 2010, the DOC policies regarding use of opiates were again explained to plaintiff. He was advised that:

> The DOC preferred a very conservative use of Opiate medications, for limited times, under very proscribed circumstances. Further, each opiate and abusable

---

[7] In addition to Ultram plaintiff was regularly prescribed numerous other medications in an effort to control his pain, including: Ibuprofen, Indomethacin, muscle rub, Robaxin, Gabapentin, Tramodol,, Neurontin, Naproxen and Tylenol. *Id*. p. 5,11, 17, 20, 21, 25, 30, 35, 39, 44, 49, 61, 69, 78,79, 100, 112, 118 , 124, 129, 133, 139, 147, 152, 161, 169, 176, 181.

[8] Arnaout noted on October 29, 2010, that "unfortunately, no matter what medication you will give, except Ultram, pt's response is "'Not working' right away" before the new medication is discussed. *Id*.

medication would be 'red flagged' for further evaluation to ensure compliance with organizational use. The policy was to be applied in a uniform and non-discriminatory fashion.

*Id.,* p. 71-72.

Plaintiff became very angry. He was advised that the arbitrary prescription of pain medication was unethical. He was told to stop harassing staff about pain medication. Plaintiff became so angry that he needed to be escorted from the medical unit by correctional staff. *Id*., p. 71-73. Plaintiff continued to request opiates, preferably Ultram. *Id*., p. 75-78.

On December 31, 2010, plaintiff's medical condition was further evaluated. Medical staff determined that plaintiff should continue with muscle relaxers to alleviate his pain. *Id.,* p. 75-76. Staff further discussed the use of a sling and another trial of physical therapy. Notes further reflect that plaintiff was non-compliant with his treatment in that he refused the recommended NSAID prescription for pain relief. *Id.*

On January 19, 2011, plaintiff was treated by defendant Getachew. Plaintiff renewed his request for Ultram for pain relief. Getachew reviewed the clinical findings and recommendations by specialists and agreed to re-prescribe Ultram for "better control of his chronic pain." *Id*., p. 77-78.

On February 6, 2011, notes reflect that plaintiff's symptoms suggested "complex regional pain management, which is very difficult to treat." *Id.,* p. 79-80. Plaintiff was referred "back to [the] orthopedic surgeon who is familiar [with] his care" to determine whether a "surgical procedure [could be performed] to alleviate his chronic pain." *Id*. On February 22, 2011, the referral was approved. *Id.* p. 81.

On April 14, 2011, plaintiff was seen by pain management specialist Cornell Shelton, M.D., who recommend a pain management plan, including use of a TENS unit to help block pain pathways.  Shelton noted that during evaluation plaintiff was "ranting and raving and threatening…demanding what he wanted me to do." *Id*., p. 84-85.

On April 19, 2011, plaintiff reported to medical staff his belief that his Depuy shoulder prosthetic had been recalled for "defect." *Id*., p. 86-87.  The clinician went to the Depuy website but no verification of a recall was found.  Additionally, it was explained to plaintiff that x-rays indicated his prosthetic was in good alignment. *Id.* p. 93.

Thereafter, medical staff submitted another referral for plaintiff to be seen by an orthopedist.  The request was approved on June 7, 2011.  On June 14, 2011, he was again evaluated by Krishnaswamy, who recommended an MRI with contrast to evaluate the status of plaintiff's rotator cuff tendon.  The referral for an MRI was submitted on June 25, 2011 and approved on July 15, 2011.  *Id*., p. 97-101.

On August 16, 2011, the MIR with contrast was again attempted but could not be successfully performed due to the metallic prosthesis.  *Id*., p. 105.  This was explained to plaintiff. He was advised by medical staff that they would contact an orthopedic surgeon to discuss further recommendations.  *Id*., p. 106-017.  It was recommended that plaintiff receive an arthrogram, a test using an x-ray with a contrast material.  The procedure was approved by Wexford.  *Id*., p. 110-12.  On September 27, 2011, Dr. Saam Tabar performed the arthrogram. Plaintiff states that Dr. Tabar advised him that "he is no expert on prosthesis and it appears the prosthesis…does not fit." ECF No. 1.  The medical records do not reveal such a finding; rather, records indicate that the arthrogram found a slight subluxation of the humeral head prosthesis.

7

There is no notation that Tabar advised plaintiff that the prosthesis did not fit. The findings also noted no evidence of a full rotator cuff tear, although the existence of a partial tear was not excluded. Plaintiff received another steroid injection on October 6, 2011. *Id*. p. 113-115.

On October 12, 2011, plaintiff was referred to an orthopedic specialist for a surgical evaluation. The referral was approved on November 21, 2011. *Id*., p. 117-118, 121. Plaintiff was advised of the pending consultation on January 26, 2012, when he was examined by medical staff. Plaintiff's examination that day revealed his shoulder had a mildly reduced range of motion. *Id.,* p. 136-37.

On February 21, 2012, Krishnaswamy performed surgical exploration of plaintiff's left shoulder and repaired a partial rotator cuff tear. *Id*., p. 145-146. The surgery went well and plaintiff left the operating room in good condition. Following the surgery plaintiff was housed in the prison infirmary where he was provided medications and a sling. Thereafter, plaintiff was ambulatory, stated he was comfortable and requested to return to his cell. *Id*., p. 149. On February 27, 2012, plaintiff refused medical treatment stating "I am fine." *Id*., p. 155. On March 1, 2012, plaintiff reported his pain was moderately controlled. *Id*, p. 156-57. On March 15, 2012, plaintiff reported improvement to his shoulder. *Id.,* p. 158-59.

Plaintiff was seen for a follow up visit with Krishnaswamy on March 23, 2012. It was noted that plaintiff's wound was healing well. Krishnaswamy recommended plaintiff receive physical therapy that consisted of strengthening exercises. Plaintiff was approved for physical therapy, in addition to another consultation with an orthopedist, on April 3, 2012. *Id*., p. 160, 163.

Plaintiff began physical therapy on April 10, 2012. *Id.*, p. 166. He reported on April 13, 2012, that his pain was significantly decreased after therapy. *Id.*, p. 167. Further improvement was noted on April 24, 2012. *Id.*, p. 174. Plaintiff was again evaluated by Krishnaswamy on April 27, 2012. It was recommended plaintiff continue physical therapy. Other procedures, including removal of this prosthesis and the possibility of total shoulder replacement were discussed. *Id.*, p. 174.

A second course of physical therapy was approved and began on May 14, 2012. *Id.*, p. 176. Plaintiff stated that he did not want to undergo therapy with medical staff, and requested he be permitted to complete the exercises in his cell. It was noted on May 18, 2012, that plaintiff was upset that he was starting physical therapy late and asked the therapist to lie by saying that he was sick so he could be released. *Id.*, p. 177. Plaintiff again asked to be released from therapy on May 21, 2012. *Id.*, p. 178.

On June 9, 2012, plaintiff was again treated by Krishnaswamy. It was noted that the weakness in plaintiff's shoulder was decreasing. *Id.* p. 182. Krishnaswamy recommended plaintiff undergo an additional 4-6 weeks of physical therapy in order to strengthen his rotator cuff. Plaintiff was advised that additional surgical procedures would be discussed once the strength in this shoulder increased. *Id.*, p. 182.

Warden Bishop avers that medical care to the Division of Correction inmate population is provided by a private medical contractor-Corizon, f/k/a Correctional medical Services ("CMS"). ECF No. 26, Ex. 2. Bishop further avers that he relies on the medical professional staff at WCI to make decisions regarding an inmate's medical care, as he is not qualified to make medical decisions regarding an inmate's medical care. *Id.*

9

**Standard of Review**

A. Motion to Dismiss

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b) (6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). The dismissal for failure to state a claim upon which relief may be granted does not require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561-62 (2007). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id.* at 562. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

In reviewing the complaint in light of a Motion to Dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6) the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997); *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.,* 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513

(2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

The Supreme Court of the United States explained a "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. Thus, a complaint need only state "enough facts to state a claim to relief that is plausible on its face." *Id.* 570.

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed.R.Civ.P. 8(a)(2)).

B.   Summary Judgment

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or

12

the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

**Analysis[9]**

A.     Respondeat Superior

---

[9] Defendants correctly maintain that plaintiff's claims of inadequate medical care arising before February 14, 2009, are barred by the statute of limitations. "Section 1983 provides a federal cause of action, but in several respects relevant here federal law looks to the law of the State in which the cause of action arose. This is so for the length of the statute of limitations: It is that which the State provides for personal-injury torts." *Wallace v. Kato,* 549 U.S. 384, 387 (2007), *citing Owens v. Okure,* 488 U.S. 235, 249-250, (1989); *Wilson v. Garcia,* 471 U.S. 261, 279-280, (1985). In Maryland the applicable statute of limitations is three years from the date of the occurrence. *See* Md. Cts & Jud. Proc. Code Ann.§ 5-101.

Defendants also note that plaintiff has previously litigated claims of denial of medical care or his left shoulder injury. They maintain that to the extent plaintiff raises claims that have previously been litigated, they are barred by the doctrine of res judicata. Where there has been a final judgment on the merits in a prior suit; an identity of the cause of action in both the earlier and the later suit; and an identity of parties or their privies in the two suits, *res judicata* is established. *See Pension Ben. Guar. Corp. v. Beverley*, 404 F. 3d 243, 248 (4th Cir. 2005). The doctrine of *res judicata* precludes the assertion of a claim after a judgment on the merits in a prior suit by the same parties on the same cause of action. *See Meekins v. United Transp. Union*, 946 F. 2d 1054, 1057 (4th Cir. 1991). In addition, "'[n]ot only does res judicata bar claims that were raised and fully litigated, it prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.'" *Id*., quoting *Peugeot Motors of America, Inc. v. Eastern Auto Distributors, Inc.*, 892 F. 2d 355, 359 (4th Cir. 1989). Plaintiff's complaint that he was denied adequate medical care for his left shoulder injury was previously dismissed. *See Fishback v. DPSCS,* JFM -07-1883. Plaintiff reiterates some of the claims raised in that case and advances new claims of denial of medical care here. To the extent the claims are repeated here they are barred by the doctrine of *res judicata*.

Plaintiff has failed to allege any action on the part of Corizon, Correctional Medical Services, or any of the individually named correctional defendants. Plaintiff's claims against them are therefore subject to dismissal. *See e.g. Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (dismissing cause of action against official where plaintiff failed to allege any personal connection between the official and the denial of plaintiff's constitutional rights.).

To the extent plaintiff alleges that defendants Corizon, Correctional Medical Services, Inc., and the correctional defendants were responsible for overseeing medical staff, such a claim is based solely upon the doctrine of *respondeat superior,* which does not apply in §1983 claims. *See Love-Lane v. Martin*, 355 F. 3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under §1983); *see also Trulock v. Freeh*, 275 F. 3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a *Bivens* suit). Liability of supervisory officials must be "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F. 3d 228, 235 (4th Cir. 2001), *citing Slakan v. Porter*, 737 F. 2d 368, 372 (4th Cir. 1984). Supervisory liability under § 1983 must be supported with evidence that (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff, (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices, and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994). Plaintiff has pointed to no action or inaction on the part of Corizon or Correctional Medical Services, Inc.,

14

that resulted in a constitutional injury, and his claims against them shall be dismissed.

Section 1983 liability on the part of the supervisory correctional defendants requires a showing that: "(1) the supervisory defendants failed promptly to provide an inmate with needed medical care, (2) that the supervisory defendants deliberately interfered with the prison doctors' performance, or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations." *Miltier v. Beorn*, 896 F. 2d 848, 854 (4th Cir. 1990) (internal citations omitted); *see also Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984) (supervisory liability for an inmate's beating by prison guards). Plaintiff has failed to satisfy such a claim. Defendant Bishop avers that he relied on the professional opinion of medical staff. Moreover, there is simply no evidence that the correctional defendants failed to provide needed medical care, interfered with the provision of same, or were tacitly indifferent to a constitutional violation. They are entitled to summary judgment.

B.    Denial of Medical Care

In order to state a claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is

inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), *quoting Farmer,* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *Brown* 240 F. 3d at 390; *citing Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken). ). Further, "[d]isagreements between an inmate and a physician over the inmate's proper care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

     Plaintiff's allegation that he was not provided necessary medical treatment for his left shoulder injury is belied by the record. The evidence before the court demonstrates that plaintiff has received constitutionally adequate medical care. Plaintiff has been evaluated regularly regarding his complaint. MRIs, a nerve conduction study, and other diagnostic tests were performed, resulting in surgery to repair plaintiff's partially torn rotator cuff. He has been provided analgesic medication and prescribed a manner of treatment including steroid injections, surgical intervention, and physical therapy, all of which were designed to help relieve pain, fix the rotator cuff tear, and restore strength and range of motion to plaintiff's shoulder. Plaintiff has been provided both the diagnostic tests and surgical intervention recommended by specialists,

and has been advised that further surgical interventions will be discussed when his shoulder has regained sufficient strength. Plaintiff's disagreement with a course of treatment does not provide the framework for a federal civil rights complaint. *See Russell v. Sheffer*, 528 F.2d 318 (4th Cir. 1975). In granting summary judgment to defendants, the court does not imply that plaintiff is not entitled to medical treatment for his serious condition. The right to treatment, however, is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely *desirable*." *Bowring v. Godwin,* 551 F.2d 44, 47-48 (4th Cir.1977) (emphasis added). "Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849(4th Cir.1985), citing *Gittlemacker v. Prasse,* 428 F.2d 1, 6 (3rd Cir. 1970). There are no exceptional circumstances in this case. Plaintiff has been evaluated repeatedly and provided appropriate tests, therapies, surgical intervention, and analgesic medication. At his last evaluation, he was advised that further surgical intervention would be discussed when he had regained strength in this shoulder. Even if true - which it is not -- the allegation that defendants provided inappropriate treatment state nothing more than a claim of medical malpractice and negligence.[10] "[A]n inadvertent failure to provide adequate medical care does not amount to deliberate indifference." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). Mere negligence or malpractice does not rise to a constitutional level. *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v.*

---

[10] Under Maryland law, a claim of medical malpractice could proceed only after complete review before the Maryland Health Claims Arbitration Board. *See* Md. Code Ann., Cts & Jud. Proc., §3-2A-01 *et seq*.; *see also Davison v. Sinai Hospital of Balt. Inc*, 462 F.Supp. 778, 779-81 (D. Md. 1978); *Group Health Ass'n, Inc. v. Blumenthal*, 295 Md. 104, 114 (1983). There is no demonstration that plaintiff has sought or completed such review. This court declines jurisdiction over these state court claims, and dismisses them without prejudice. *See* 28 U.S.C. §1367(c)(3); *United Mine Workers v. Gibbs,* 383 U. S. 715, 726 (1966).

*Smith*, 662 F. Supp. 352, 361 (D. Md. 1986).  Accordingly, defendants are entitled to summary judgment as to plaintiff's Eighth Amendment claim.

For the reasons stated, summary judgment is granted in favor of defendants.  A separate Order shall be entered in accordance with this Memorandum.


_____March 13, 2013_____          ____/s/_____
Date                                J. Frederick Motz
                                    United States District Judge